UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
RONALD BARNES,                                    :
                                                  :
                              Plaintiff,          :
                                                  :
              v.                                  :      **MEMORANDUM OF DECISION**
                                                  :      17-CV-1303 (WFK)
THE CITY OF NEW YORK, and DET. JOSEPH             :
GAROFALO, the individual Defendant sued           :
individually and in their official capacities,    :
                                                  :
                                                  :
                                                  :
                              Defendants.         :
------------------------------------------------------------------X

**WILLIAM F. KUNTZ, II, United States District Judge:**

Ronald Barnes ("Plaintiff") brings this action pursuant to 42 U.S.C. § 1983 and New York law against the City of New York (the "City") and Detective Joseph Garofalo (collectively, "Defendants"). Plaintiff seeks damages for alleged violations of his constitutional rights guaranteed by the Fourth, Fifth, Sixth, and Fourteenth Amendments of the United States Constitution, specifically as claims for (1) false arrest; (2) malicious prosecution, and (3) violation of Substantive Due Process, all under 42 U.S.C. § 1983 as well as municipality liability for the City, pursuant to *Monell v. Dep't of Soc. Servs. of the City of New York*, 436 U.S. 658 (1978). Plaintiff also alleges violations under New York law for (1) false arrest; (2) false imprisonment; (3) malicious prosecution, and (4) violations of Article I, § 12 of the New York State Constitution as well as liability for the City under the common law doctrine of *respondeat superior*. Defendants move under Rule 56 of the Federal Rules of Civil Procedure for summary judgment as to all claims asserted against them. For the reasons stated below, Defendants' motion is GRANTED in part and DENIED in part.

## BACKGROUND AND PROCEDURAL HISTORY

The following facts, drawn from the parties' Local Rule 56.1 Statements are undisputed

or described in the light most favorable to Plaintiff, the non-moving party. Fed. R. Civ. P. 56(c);

*Capobianco v. City of New York*, 422 F.3d 47, 50 n.1 (2d Cir. 2005).[1]

---

[1] Citations to a party's Rule 56.1 statement and memorandum incorporate by reference the documents cited therein. The Court takes to be true facts stated in a party's Rule 56.1 statement supported by testimonial or documentary evidence and denied by the other party with only a conclusory statement without citation to conflicting testimonial or documentary evidence. *See* E.D.N.Y. Local Rule 56.1(c), (d).

## I.    Background

On March 11, 2013, Mr. Stefon Luckey ("Mr. Luckey"), his brother, Mr. Alvin Luckey, and his girlfriend, Ms. Michelle Surrency, went to Diva Café Bar in Queens, New York.  ECF No. 30, Plaintiff's R. 56.1 St. ("Pl.'s St.") ¶ 22.  At approximately 2:50 A.M., after a bartender had an epileptic seizure requiring the patrons to exit to the street, Mr. Luckey was shot in the leg outside of Diva Café Bar.  ECF No. 34, Defendants' R. 56.1 St. ("Defs.' St.") ¶ 2; Pl.'s St. ¶ 23. After Mr. Luckey was shot, his brother called 911 and Detective Joseph Garofalo, then Officer Garofalo, and other NYPD officers arrived on the scene.  Defs.' St. ¶ 3.  Mr. Luckey, his brother, and his girlfriend spoke with Detective Garofalo.  Pl.'s St. ¶ 25.  They informed Detective Garofalo they did not see the shooter.  Defs.' St. ¶ 4.  Mr. Luckey further informed Garofalo he did not have "any problems with anyone inside or outside the bar" on the night of March 11, 2013.  Pl.'s St. ¶ 26.  Detective Garofalo and his colleagues also spoke with Linda Mcauley and Shade Headley, employees at Diva Café Bar.  *Id.* ¶ 27.  Ms. Headley provided the Officers with a description of the shooter as a "fat, heavy set Black male."  *Id*.  In April 2013, the month after the shooting, the NYPD closed the investigation due to a lack of leads.  *Id.*  ¶ 28.

On November 12, 2014, twenty months after Mr. Luckey was shot outside of Diva Café Bar, Mr. Kenneth Bryan was arrested on unrelated charges and interviewed by Detective Garofalo.  Defs.' St. ¶ 7; Pl.'s St. ¶¶ 30, 37.  Plaintiff alleges Mr. Bryan first refused to answer any questions about his arrest, but subsequently offered Detective Garofalo information about the March 11, 2013 shooting of Mr. Luckey.  Pl.'s St. ¶ 38.  This was the first time Detective Garofalo had spoken with Mr. Bryan.  Pl.'s St. ¶ 43.  Mr. Bryan informed Detective Garofalo he had witnessed a man he knew by the names "Ra," "Rar," "Rah," or "Ron," "arguing with [Mr. Luckey]" both inside and outside Diva Café Lounge, and eventually saw him "pull out a firearm

from his waistband and shoot the victim in the leg, and [run] off."  Defs.' St. ¶¶ 8–10; Pl.'s St. ¶¶ 39, 41–42.  Plaintiff alleges Detective Garofalo's paperwork indicated Mr. Bryan claimed to have known "Ra" for "3 to 4 years at Diva Lounge."  Pls.' St. ¶ 40.  The parties agree Mr. Bryan was never inside Diva Café Bar on the night of the shooting but was present outside of the bar. Pl.'s St. ¶¶ 54, 58.  Mr. Bryan described "Ra" as "an older male, black.  He looked homeless . . . about 55, 65 years old.  Beard, salt-and-pepper beard, kind of low hair cut . . . about 6-foot tall, 200-plus pounds . . . ."  Defs.' St. ¶ 11.

After inputting this description into an NYPD database, Detective Garofalo printed and showed Mr. Bryan a photograph of Plaintiff, Mr. Ronald Barnes.  Defs.' St. ¶¶ 12, 15.  Mr. Bryan identified the person in the photograph, Plaintiff, as "Ra," the person who shot Mr. Luckey.  Pl.'s St. ¶ 16.  Mr. Bryan then wrote "This is 'Ra' I, Kenneth Bryan, witnessed him shoot a man in the leg in front of Diva's Lounge on 114th and Farmer's Boulevard" on the photograph, signing his name after the statement.  Defs.' St. ¶ 17.  Plaintiff alleges Detective Garofalo never corroborated any of the information he obtained from Mr. Bryan.  Pl.'s St. ¶¶ 46–48.

After Mr. Bryan identified the person in the photograph as Plaintiff, an Active Investigation Card ("I-Card") was issued for Plaintiff's arrest for "a non fatal shooting in the confines of the 113th PCT."  Pl.'s St. ¶ 18.  The next day, November 13, 2014, Plaintiff was arrested.  Defs.' St. ¶ 19.  Plaintiff was subsequently charged by the Queens County District Attorney's Office with (1) Attempted Murder in the Second Degree; (2) Attempted Assault in the First Degree; (3) Criminal Possession of a Weapon in the Second Degree; and (4) Assault in the

Second Degree. Pl's. St. ¶ 20. On June 29, 2015, the criminal charges against Plaintiff were dismissed. Defs.' St. ¶ 21.

## II.    Procedural History

Plaintiff commenced this action on March 07, 2017. Compl., ECF No. 1. On October 12, 2018, Defendants filed the instant motion for summary judgment, ECF No. 28, as well as a memorandum in support, ECF No. 31 ("Mem."); on November 19, 2018, Plaintiff filed a memorandum in opposition, ECF No. 35 ("Opp."); and on December 28, 2018, Defendants filed a memorandum in reply, ECF No. 32 ("Repl.").

On December 12, 2019, the Court granted in part and denied in part Defendants' motion for summary judgment, ECF No. 37. The Court granted Defendants' motion for summary judgment as to Plaintiff's § 1983 due process, municipal liability, and malicious prosecution claims, as well as Plaintiff's state-law malicious prosecution claims. The Court denied Defendants' motion for summary judgment as to Plaintiff's remaining claims. The Court writes now to provide the reasoning for its decision.[2]

## LEGAL STANDARD

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law" by citation to materials in the record, including depositions, affidavits, declarations, and electronically stored information. Fed. R. Civ. P. 56(a)-(c). Affidavits and declarations, whether supporting or opposing a summary judgment motion, "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." *Id.*; *see also Patterson v. Cty. of Oneida*, 375 F.3d 206, 219 (2d Cir. 2004).

---

[2] On October 22, 2021, the Court adopted the parties pretrial order, ECF No. 44. A status conference in the action is scheduled for Wednesday, April 28, 2021 at 12:00 Noon.

"In determining whether summary judgment is appropriate, [the] Court will construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011) (citation and internal quotation marks omitted). The role of the district court is not to weigh the evidence and determine the truth of the matter, but rather to answer, "the threshold inquiry of determining whether there is the need for a trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986). The Court must therefore review whether the record could "lead a rational trier of fact to find for the non-moving party." *Lovejoy-Wilson v. NOCO Motor Fuel, Inc.*, 263 F.3d 208, 212 (2d Cir. 2001) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

If the moving party carries its preliminary burden, the burden shifts to the non-movant to raise the existence of "specific facts showing that there is a genuine issue for trial." *Cityspec, Inc. v. Smith*, 617 F. Supp. 2d 161, 168 (E.D.N.Y. 2009) (Wexler, J.) (quoting *Matsushita*, 475 U.S. at 586). "The mere existence of a scintilla of evidence" in support of the non-movant will be insufficient to defeat a summary judgment motion. *Anderson*, 477 U.S. at 252. Rather, the non-moving party must make a showing sufficient to establish the existence of each element constituting its case. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986) ("[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."). Conclusory statements, devoid of specifics, are insufficient to defeat a properly supported motion for summary judgment. *See Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 452 (2d Cir. 1999); *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998).

**DISCUSSION**

The Complaint sets forth claims against Defendants, pursuant to 42 U.S.C. § 1983, for: (1) false arrest; (2) malicious prosecution; and (3) deprivation of substantive due process.  Compl. ¶¶ 39–62.  Plaintiff also alleges municipal liability for the City of New York, ostensibly under *Monell v. Dep't of Soc. Servs. of the City of New York*, 436 U.S. 658 (1978).  *Id.* ¶¶ 63–72.[3] Finally, the Complaint sets forth related state law claims against Defendants for malicious prosecution, false arrest, false imprisonment, violations of Article I, § 12 of the New York State Constitution and liability for the City pursuant to the common law doctrine of *respondeat superior*.  *Id.* ¶¶ 73–100.  The Court analyzes each claim in turn.

**I.    False Arrest**

   Plaintiff brings false arrest claims against Defendant Detective Garofalo under both § 1938 and New York State law. "A § 1983 claim for false arrest, resting on the Fourth Amendment right of an individual to be free from unreasonable seizures, including arrest without probable cause is substantially the same as a claim for false arrest under New York law." *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996) (citations omitted); *Folk v. City of New York*, 243 F. Supp. 3d 363, 371 (E.D.N.Y. 2017) (Kuntz, J.).  "The common law tort of false arrest is a species of false imprisonment," such that the two share the same elements under New York Law. *See Singer v. Fulton Cty. Sheriff*, 63 F.3d 110, 118 (2d Cir. 1995).  Under New York law, a plaintiff alleging false arrest must show: (1) "the defendant intended to confine" the plaintiff; (2) "the plaintiff was conscious of the confinement"; (3) "the plaintiff did not consent to the confinement"; and (4) "the confinement was not otherwise privileged." *Broughton v. State*, 335

---

[3] In Plaintiff's Mem. of Law in Opp. to Defs.' Motion for Summary Judgment, ECF No. 35 at 5, Plaintiff withdrew his substantive due process and municipal liability claims.  Accordingly, the Court hereby dismisses Plaintiff's substantive due process and municipal liability claims, the Fourth and Fifth Causes of Action in the Complaint.

N.E.2d 310, 314 (N.Y. 1975); *Folk*, 243 F. Supp. 3d at 371.  An arrest is privileged if it was "based on probable cause."  *Savino v. City of New York*, 331 F.3d 63, 76 (2d Cir. 2003) (quoting *Broughton*, 335 N.E.2d at 315).  Accordingly, "[t]he existence of probable cause to arrest constitutes justification and is a complete defense to an action for false arrest, whether that action is brought under state law or under § 1983."  *Weyant*, 101 F.3d at 852 (citations and quotation marks omitted); *Jenkins v. City of New York*, 478 F.3d 76, 84 (2d Cir. 2007).

"In general, probable cause to arrest exists when the officers have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime."  *Weyant*, 101 F.3d at 852 (citations omitted); *United States v. Fisher*, 702 F.2d 372, 375 (2d Cir. 1983) (citations omitted).  "Whether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest."  *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004) (citing *Maryland v. Pringle*, 540 U.S. 366, 371 (2003)).  "Ordinarily, the identification, by an eyewitness, of a suspect will likely be sufficient to establish probable cause for an arrest.  However, 'the existence of probable cause is to be determined on the basis of the totality of the circumstances,' through an inquiry into whether the facts known by the arresting officer at the time of the arrest objectively provided probable cause or arguable probable cause to arrest."  *Hargroves v. City of New York*, 411 F. App'x 378, 383 (2d Cir. 2011) (Summary Order) (citations omitted).  In cases where a single photograph is shown to a victim to identify a person responsible for a crime, the Court must first decide whether the identification procedure unduly and unnecessarily suggested that the defendant was the perpetrator.  *Raheem v. Kelly*, 257 F.3d 122, 133 (2d Cir. 2001).  If so, the Court must determine whether the "identification was nonetheless independently reliable."

*Walston v. City of New York*, 289 F. Supp. 3d 398, 408 (E.D.N.Y. Jan. 10, 2018) (Chen, J.), aff'd, 754 F. App'x 65 (2d Cir. 2019).

Defendants assert there was probable cause to arrest Plaintiff because he was positively identified by Mr. Bryan as the man who shot Mr. Luckey.  Plaintiff argues the single-photo identification procedure was unduly suggestive, and other facts indicate Mr. Bryan was not credible, negating the existence of probable cause.  The central issue—whether probable cause existed for Plaintiff's arrest—rests on whether Mr. Bryan, the only person who identified Plaintiff as the shooter, was a sufficiently reliable witness.  The Court finds this material issue of disputed fact cannot be resolved on summary judgment.  Plaintiff has raised numerous concerns regarding Mr. Bryan's reliability, including suggesting Mr. Bryan was incentivized to provide information to Detective Garofalo in exchange for leniency in his own prosecution.  Pl.'s Mem. at 3.  Further, Plaintiff argues the single-photo identification procedure was unduly suggestive, especially because the November 12, 2014 interview was the first time Mr. Bryan provided information to Detective Garofalo and no other history of cooperation or reliability existed.  *Id.* at 14–17.  The Court finds these factual inquiries surrounding Mr. Bryan's credibility to be material to whether probable cause existed for Plaintiff's arrest.  It is ultimately the jury's role to assess Mr. Bryan's credibility, and the Court will not usurp that role here.  For the reasons described above, this Court denies Defendants' motion for summary judgment on Plaintiff's false arrest claims pursuant to § 1983 and under state law.

### A.  Qualified Immunity Does Not Bar Plaintiff's False Arrest Claim

Defendants also move for summary judgment as to the false arrest claims on the basis of qualified immunity.  However, as there are significant facts in dispute regarding the existence of

probable cause to arrest, the Court concludes Defendants are not entitled to summary judgment on the basis of qualified immunity.

Where officers arrest a plaintiff without a warrant and without probable cause, qualified immunity shields government officials performing discretionary functions "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (raising the question of whether it was objectively reasonable for the officers to believe they did have probable cause); *Jenkins*, 478 F.3d at 87. "An officer's determination is objectively reasonable if there was 'arguable' probable cause at the time of arrest—that is, if 'officers of reasonable competence could disagree on whether the probable cause test was met.'" *Id.* (quoting *Lennon v. Miller*, 66 F.3d 416, 423–24 (2d Cir. 1995).

Summary judgment on qualified immunity grounds is inappropriate here for the same reason described above. Factual disputes concerning Mr. Bryan's credibility bear directly upon whether it was objectively reasonable for the arresting officer to believe he was acting lawfully and thus necessitate a jury's consideration of these issues. *See Oliveira*, 23 F.3d at 650; *Curry v. City of Syracuse*, 316 F.3d 324, 334–35 (2d Cir. 2003) (noting summary judgment based either on the merits or on qualified immunity requires no dispute about material factual issues remain); *Mickle v. Morin*, 297 F.3d 114, 122 (2d Cir. 2002) (noting when circumstances are in dispute, a defendant is not entitled to judgement as a matter of law on a defense of qualified immunity); *McKelvie v. Cooper*, 190 F.3d 58, 63 (2d Cir. 1999) ("Where, as here, there are facts in dispute that are material to a determination of reasonableness, summary judgment on qualified immunity grounds is not appropriate."); *Weyant*, 101 F.3d at 852 (holding summary judgment is only appropriate if no dispute exists "as to the pertinent events and the knowledge of the

officers").  Accordingly, Plaintiff's false arrest claims can proceed under both §1983 and state law.

## II.     Plaintiff's Malicious Prosecution Claim Fails as a Matter of Law

Plaintiff also brings a malicious prosecution claim against Defendants.  "In order to prevail on a [Section] 1983 claim against a state actor for malicious prosecution, a plaintiff must show a violation of his rights under the Fourth Amendment and must establish the elements of a malicious prosecution claim under [New York] state law." *Manganiello v. City of New York*, 612 F.3d 149, 160–61 (2d Cir. 2010) (internal citations omitted).  In New York, a claim for malicious prosecution brought under 42 U.S.C. § 1983 has four elements: (1) the initiation of a proceeding, (2) termination of said proceeding favorable to plaintiff, (3) lack of probable cause, and (4) malice.  *Savino v. City of New York*, 331 F.3d 63, 72 (2d Cir. 2003) (quoting *Colon v. City of New York*, 60 N.Y.2d 78, 82 (2d Dep't 1983)).

The Second Circuit has held that "[i]nitiation in [the context of malicious prosecution] is a term of art," involving more than merely reporting a crime and giving testimony; "it must be shown that Defendant played an active role in the prosecution, such as giving advice and encouragement or importuning the authorities to act."  *Rohman v. New York City Transit Auth.*, 215 F.3d 208, 217 (2d Cir. 2000); *Mangiello v. City of New York*, 612 F.3d 149, 217 (2d Cir. 2010) ("[O]ne who does no more than disclose to a prosecutor all material information within his knowledge is not deemed to be the initiator of the proceedings.").  "A malicious-prosecution claim cannot stand if the decision made by the prosecutor to bring criminal charges was independent of any pressure exerted by [the] police."  *Alcantara v. City of New York*, 646 F. Supp. 2d 449, 457 (S.D.N.Y. 2009) (citing *Hartman v. Moore*, 547 U.S. 250, 263 (2006)); *see also Towns v. City of New York*, 176 F. 3d 138, 147 (2d Cir. 1999) ("[T]he chain of causation

between a police officer's unlawful arrest and a subsequent conviction and incarceration is broken by the intervening exercise of independent judgment."). Thus, "once a criminal Defendant has been formally charged, the chain of causation between the officer's conduct and the claim of malicious prosecution is broken by the intervening actions of the prosecutor, thereby abolishing the officer's responsibility for the prosecution." *Jouthe v. City of New York*, 05-CV-1374, 2009 WL 701110, at *11 (E.D.N.Y. Mar.10, 2009) (Garaufis, J.).

Plaintiff's malicious prosecution claim against Detective Garofalo fails as a matter of law because Detective Garofalo did not initiate the prosecution against Plaintiff. Detective Garofalo's only role in Plaintiff's prosecution was to relay the findings of his investigation to prosecutors, which is insufficient to establish he "initiated the proceeding." *See Lafrance v. Bemben*, 10-CV-4583, 2013 WL 132702, at *6 (E.D.N.Y. Jan. 10, 2013) (Tiscione, Mag.) (dismissing Plaintiff's malicious prosecution claim where arresting officers merely conveyed information to prosecutors, and thus, did not initiate the prosecution). Further, there is no evidence showing Detective Garofalo misled prosecutors or otherwise pressured the prosecutors to institute proceedings against Plaintiff. Accordingly, the Court grants Defendants' motion for summary judgment as to Plaintiff's malicious prosecution claims under both § 1983 and New York state law.

**III. Remaining State Law Claims**

    *A.   Respondeat Superior*

The doctrine of *respondeat superior* renders an employer vicariously liable for torts committed by an employee acting within the scope of his or her employment. *Beauchamp v. City of New York*, 771 N.Y.S.2d 129, 131 (2d Dep't 2004). "Since the determination of whether an employee's actions fall within the scope of employment depends heavily on the facts and

circumstances of the particular case, the question is ordinarily for the jury." *Id.* (citations omitted).  With respect to plaintiff's false arrest claims arising under New York state common law, a reasonable jury could conclude such actions were taken to further the City's interest or to carry out law enforcement duties incumbent upon the officers.  *See id.*; *Graham v. City of New York*, 770 N.Y.S.2d 92, 93 (2d Dep't 2003).  Accordingly, Defendants' motion for summary judgment on Plaintiff's state common law *respondeat superior* claims is denied.

      B.   Violation of Article I, § 12 of the New York State Constitution

      Plaintiff also brings claims, pursuant to Article I, § 12 of the New York State Constitution, against both Defendant Garofalo and the City of New York.  A false arrest claim premised on the New York State Constitution Article I, § 12,  "is unavailable where an alternative remedy will adequately protect the interests at stake."  *Campbell v. City of New York*, 09-CV-3306, 2011 WL 6329456, at \*5 (E.D.N.Y. Dec. 15, 2011) (Block, J.) (quotation omitted); *see Sullivan v. City of New York*, 17-CV-3779, 2018 WL 3368706, at \*20 (S.D.N.Y. July 10, 2018) (Failla, J.) ("Courts have consistently held that where a plaintiff has asserted a viable Fourth Amendment claim under Section 1983 any violation of the plaintiff's [New York State Constitution Article I, § 12] right to be free of unreasonable searches and seizures can be vindicated through this claim.") (internal quotations and alterations omitted).  Because the Plaintiff has an alternative remedy, i.e., a false arrest claim pursuant to § 1983 against Detective Garofalo, Article I, § 12 is not available and summary judgment is granted as to that claim.

      However, the alternative remedy of false arrest against the City, premised upon *respondeat superior* liability, is not viable pursuant to § 1983.  *See, e.g.*, *Vilkhu v. City of New York*, 06-CV-2095, 2008 WL 1991099, at \*9 (E.D.N.Y. May 5, 2008) (Sifton, J.) ("A municipality cannot be held liable under § 1983 on a *respondeat superior* theory.").  Without the

alternative remedy available under § 1983 against the City, Plaintiff can maintain his claim under the New York State Constitution as against the City of New York.

In sum, Defendants' motion for summary judgment is granted with respect to Plaintiff's New York State Constitution claim against Detective Garofalo, and denied with respect to Plaintiff's New York State Constitution claim against the City.

## CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is GRANTED in part and DENIED in part.

**SO ORDERED.**

s/ WFK
_____
HON. WILLIAM F. KUNTZ, II
UNITED STATES DISTRICT JUDGE

Dated: January 26, 2021
       Brooklyn, New York

13